UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

LEONARD L.J. DIAS, M.D., P.C.,　　　　　　　Case No. 15-30729-dof
　　　　Debtor.　　　　　　　　　　　　　　　　Chapter 7 Proceeding
　　　　　　　　　　　　　　　　　　　　　　　　Hon. Daniel S. Opperman
_____/

OPINION DETERMINING NATURE OF BUSINESS OF DEBTOR LEONARD L.J. DIAS,
M.D., P.C. AND DENYING MOTION TO DISMISS
OF CHAPTER 7 TRUSTEE, COLLENE K. CORCORAN

　　　　The appointed Chapter 7 Trustee in this case, Collene K. Corcoran (the "Trustee"), filed a Motion to Dismiss this case, and the Debtor and Fifth Third Bank filed objections. Subsequently, Fifth Third Bank withdrew its objection, but the Debtor's objection remains. In her Motion to Dismiss, the Trustee cites the lack of cooperation of the Debtor's principal, Dr. Leonard L.J. Dias, M.D., the lack of assets in the estate, the substantial amount of patient records of the Debtor that may require disposal pursuant to 11 U.S.C. § 351, and the lack of a recognizable bankruptcy purpose to file this Chapter 7 proceeding. The Debtor responded by disputing the factual allegations made by the Trustee and pointing out that 11 U.S.C. § 351 is designed to meet the specific fact scenario present in this case. The Court heard oral argument regarding the Trustee's Motion to Dismiss on September 30, 2015, and allowed the parties an opportunity to file supplemental briefs, which both the Debtor and the Trustee did on October 1, 2015. After careful consideration of the pleadings, the Debtor's Chapter 7 petition, and arguments of counsel, the Court concludes that the Trustee's Motion to Dismiss should be denied for the reasons stated in this Opinion.

1

## Findings of Fact

Dr. Leonard L.J. Dias, M.D. ("Dr. Dias") practiced medicine in the general Genesee County, Michigan area and formed the Debtor, Leonard L.J. Dias, M.D., P.C. ("Dias P.C.") as part of his medical practice. Subsequently, Dr. Dias' medical and financial condition deteriorated and both Dr. Dias and Dias P.C. filed Chapter 7 petitions with this Court. In this case, Dias P.C. indicated in its Chapter 7 petition that it was not a "health care business" in the "nature of business" portion of the petition. Instead, Dias P.C. indicated that it was in the "other" business.

As part of a medical practice, Dr. Dias and Dias P.C. collected medical and financial information regarding patients. As detailed at the September 30, 2015, hearing, much of this information is stored via the internet and other information is collected in paper form. The papers constituting medical records still remain at the office of Dias P.C., of which Fifth Third Bank has a mortgage interest. Per Schedule D, Fifth Third Bank is owed approximately $159,733.00, and the value of the commercial building of Dias P.C. is $219,400.00. Per the arguments of counsel, the Chapter 7 petition of Dias P.C. was prompted by the threat of foreclosure of this property by Fifth Third Bank, as well as other remedies enforced by Fifth Third Bank.

The Trustee has attempted to liquidate assets of Dias P.C., but currently those efforts are unsuccessful. Moreover, the Trustee has investigated methods to secure the patient records, notify patients, and then possibly destroy the patient records in a confidential manner and has concluded that the cost of doing so is in the tens of thousands of dollars. Complicating this process is that neither Dr. Dias or Dias P.C. have a list of patients with addresses to allow the Trustee or the Trustee's representatives to inform the patients of the existence of their records, the possibility of retrieving those records, or the protocol for the destruction of the records, if the records are not retrieved.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).  All issues in this matter emanate from Title 11 of the United States Code and, therefore, are within this Court's jurisdiction.

## Applicable Statutes

11 U.S.C. § 707.  Dismissal of a case or conversion to a case under chapter 11 or 13

  (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including –

      (1) unreasonable delay by the debtor that is prejudicial to creditors;

      (2) nonpayment of any fees or charges required under chapter 123 of title 28; and

      (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

11 U.S.C. § 351.  Disposal of patient records

     If a health care business commences a case under chapter 7, 9, or 11, and the trustee does not have a sufficient amount of funds to pay for the storage of patient records in the manner required under applicable Federal or State law, the following requirements shall apply:
     (1) The trustee shall –

      (A) promptly publish notice, in 1 or more appropriate newspapers, that if patient records are not claimed by the patient or an insurance provider (if applicable law permits the insurance provider to make that claim) by the date that is 365 days after the date of that notification, the trustee will destroy the patient records; and

      (B) during the first 180 days of the 365-day period described in subparagraph (A), promptly attempt to notify directly each patient that is the subject of the patient records and appropriate insurance carrier concerning the patient records by mailing to the most recent known address of that patient, or a family member or contact person for that patient, and to the appropriate insurance carrier

3

an appropriate notice regarding the claiming or disposing of patient records.

      (2) If, after providing the notification under paragraph (1), patient records are not claimed during the 365-day period described under that paragraph, the trustee shall mail, by certified mail, at the end of such 365-day period a written request to each appropriate Federal agency to request permission from that agency to deposit the patient records with that agency, except that no Federal agency is required to accept patient records under this paragraph.

      (3) If, following the 365-day period described in paragraph (2) and after providing the notification under paragraph (1), patient records are not claimed by a patient or insurance provider, or request is not granted by a Federal agency to deposit such records with that agency, the trustee shall destroy those records by –

      (A) if the records are written, shredding or burning the records; or

      (B) if the records are magnetic, optical, or other electronic records, by otherwise destroying those records so that those records cannot be retrieved.

<u>11 U.S.C. § 101(27A)</u>

      The term "health care business" –

      (A) means any public or private entity (without regard to whether that entity is organized for profit or not for profit) that is primarily engaged in offering to the general public facilities and services for –

      (i) the diagnosis or treatment of injury, deformity, or disease; and

      (ii) surgical, drug treatment, psychiatric, or obstetric care; and

      (B) includes –

      (i) any –

      (I) general or specialized hospital;

      (II) ancillary ambulatory, emergency, or surgical treatment facility;

      (III) hospice;

      (IV) home health agency; and

      (V) other health care institution that is similar to an entity referred to in subclause (I), (II), (III), or (IV); and

an appropriate notice regarding the claiming or disposing of patient records.

(2) If, after providing the notification under paragraph (1), patient records are not claimed during the 365-day period described under that paragraph, the trustee shall mail, by certified mail, at the end of such 365-day period a written request to each appropriate Federal agency to request permission from that agency to deposit the patient records with that agency, except that no Federal agency is required to accept patient records under this paragraph.

(3) If, following the 365-day period described in paragraph (2) and after providing the notification under paragraph (1), patient records are not claimed by a patient or insurance provider, or request is not granted by a Federal agency to deposit such records with that agency, the trustee shall destroy those records by –

(A) if the records are written, shredding or burning the records; or

(B) if the records are magnetic, optical, or other electronic records, by otherwise destroying those records so that those records cannot be retrieved.

<u>11 U.S.C. § 101(27A)</u>

The term "health care business" –

(A) means any public or private entity (without regard to whether that entity is organized for profit or not for profit) that is primarily engaged in offering to the general public facilities and services for –

(i) the diagnosis or treatment of injury, deformity, or disease; and

(ii) surgical, drug treatment, psychiatric, or obstetric care; and

(B) includes –

(i) any –

(I) general or specialized hospital;

(II) ancillary ambulatory, emergency, or surgical treatment facility;

(III) hospice;

(IV) home health agency; and

(V) other health care institution that is similar to an entity referred to in subclause (I), (II), (III), or (IV); and

    (iii) any long-term care facility, including any –

     (I) skilled nursing facility;

     (II) intermediate care facility;

     (III) assisted living facility;

     (IV) home for the aged;

     (V) domiciliary care facility; and

     (VI) health care institution that is related to a facility referred to in subclause (I), (II), (III), (IV), or (V), if that institution is primarily engaged in offering room, board, laundry, or personal assistance with activities of daily living and incidentals to activities of daily living.

Analysis

A court may dismiss a case under 11 U.S.C. § 707(a) "only after notice and a hearing and only for cause." 11 U.S.C.A. § 707(a). Section 707(a) lists three examples of "cause": unreasonable delay, nonpayment of fees and failure to file schedules and statements. These examples are intended to be non-exclusive illustrations of "cause." *Industrial Ins. Servs., Inc. v. Zick (In re Zick)*, 931 F.3d 1124 (6th Cir. 1991). The ability to repay debts may constitute substantial abuse under § 707(b), but alone, cannot constitute cause under § 707(a). *See In re Bridges*, 135 B.R. 36, 37-38 (Bankr. E.D. Ky. 1991). However, bad faith can constitute cause. *See Zick*, 931 F.2d at 1127. The *Zick* Court further clarified that a:

> [d]ismissal based on lack of good faith must be undertaken on an *ad hoc* basis. . . . It should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence.

*Id.* at 1129 (citation omitted).

The thrust of the Trustee's argument is that Dr. Dias has not aided the Trustee in discharging

her duties and, more distressingly, has left insufficient assets in Dias P.C. to allow the Trustee to fulfill duties that may be imposed upon her by 11 U.S.C. § 351. The Trustee further notes and argues, however, that it is not clear whether 11 U.S.C. § 351 is applicable because Dias P.C. is not a "health care business," as such is defined in 11 U.S.C. § 101(27A). In contrast, Dias P.C. argues that it is a health care business, although that designation was not selected when the Chapter 7 petition was filed in this case and before the issue was raised by the Trustee.

To determine whether 11 U.S.C. § 351 applies in this case, the Court must first resort to the definition of a health care business as defined by 11 U.S.C. § 101(27A). Initially, a review of that statute reveals that 11 U.S.C. § 101(27A)(A) requires the existence of at least four elements: (1) a public or private entity; (2) the engagement in the offering to the general public facilities and services; (3) the diagnosis or treatment of injury, deformity, or disease; and (4) surgical, drug treatment, psychiatric, or obstetric care.

Further subsection (B), which, by the use of the word "and" is meant to include the following characteristics: (1) general or specialized hospital; (2) ancillary, ambulatory, emergency, or surgical treatment facility; (3) hospice; and (4) home health agency. Further, an additional "and" requires that the business be any long-term care facility, including a skilled nursing facility, intermediate care facility, assisted living facility, home for the aged, domiciliary care facility, and a health care institution referred to previously if the institution is primarily engaged in offering room, board, laundry, or personal assistance with activities of daily living and incidentals to activities of daily living.

In short, there are a number of elements that must be proven before an entity can be a "health care business." Three cases demonstrate the range of businesses that may or may not be a health care business. First, in *In re Banes*, 355 B.R. 532 (Bankr. M.D.N.C. 2006), the bankruptcy court had to analyze whether a dental practice that was defunct and had no active patients was a health

care business. While the issue in *Banes* involved the appointment of a patient care ombudsman, the analysis of 11 U.S.C. § 101(27A) was required. The *Banes* Court first noted that the use of the conjunctive word "and" is designed to require that all elements must exist. *Id.* at 534. The *Banes* Court continued to analyze subsection (B) and noted that all of the entities listed in that subsection involve both housing and treatment. Accordingly, the *Banes* Court concluded: "[I]t is difficult to imagine that the legislature would have intended a business that is so fundamentally different, such as an outpatient dental practice, to be read into the definition." *Id.* at 535.

The issue of whether a debtor that provided administrative support to a group of physicians and their practices constituted a health care business was addressed in the case of *In re Medical Assocs. of Pinellas, L.L.C.,* 360 B.R. 356 (Bankr. M.D. Fla. 2007). In *Medical Assocs.*, the debtor provided such administrative support and filed a Chapter 11 petition with the notation that it was a health care business. Again, the issue before the *Medical Assocs.* Court was the appointment of a patient care ombudsman, but the *Medical Assocs.* Court first analyzed whether the debtor was a health care business. As in *Banes*, the *Medical Assocs.* Court went through the statutory analysis of 11 U.S.C. § 101(27A). In doing so, the *Medical Assocs.* Court noted two factors. First, the Court noted the need for some sort of requirement that patients reside or stay at the facility:

> From those examples, it appears that Congress intended a health care business to be something more than an administrative support facility that offers ancillary laboratory services. Each of the examples included in subparagraph (B) of section 101(27A) describes businesses where patients reside, receive emergency ambulatory or surgical treatment, or receive in-home or inpatient care, and clearly includes long-term care health facilities such as hospitals and nursing homes. . . . However, while the Court does not determine the precise limits of what is or is not a "health care business" under section 101(27A), the examples included in subparagraph (B) appear to contemplate something more than a doctor's office and clearly require more than an administrative support facility, such as the Debtor, that does not deal with the general public.

*Id.* at 360-61.

> Second, *Medical Assocs.* referred to the legislative history of Section 351.
>
>> Finally, although the legislative history of the BAPCPA is sparse, the legislative history relating to efforts in 1999 and 2000 to amend the Bankruptcy Code to address patient care issues appears consistent with the concept that a health care business was intended to refer to inpatient care facilities such as hospitals and nursing homes and not most outpatient facilities such as a doctor's office. For example, in the Senate discussions of the original versions of the health care amendments that appeared in the Bankruptcy Reform Act of 1999 (which are virtually the same as the BAPCPA amendments), Senator Charles E. Grassley stated, "I was shocked to realize that the Bankruptcy Code doesn't require bankruptcy trustees and creditor committees to consider the welfare of patients *when closing down or reorganizing a hospital or nursing home*. So, under the [Bankruptcy Reform Act of 1999] *whenever a hospital or nursing home declares bankruptcy*, a patient ombudsman will be appointed to represent the interests of patients during bankruptcy proceedings." 145 Cong. Rec. S2737-01, S2739 (1999) (emphasis added). Likewise, during the following year's congressional debate in connection with the 1999 legislation, Senator Grassley commented that, "this title amends the code to deal with problems presented when a health care business, *such as a hospital or nursing home*, files for bankruptcy under Chapters 7, 9 or 11." 146 Cong. Rec. S11683-02, S11720 (2000) (emphasis added). *See also In re Barnes,* 355 B.R. 532, 534-535 (Bankr. M.D.N.C. 2006) (finding that "the Debtor's dental practice does not provide patients with shelter and sustenance in addition to medical treatment, and is plainly not within the range of health care businesses anticipated by the statute.").

*Id*. at 361.

Next, the bankruptcy court in *In re Alternate Family Care*, 377 B.R. 754 (Bankr. S.D. Fla. 2007) addressed whether a state licensed child placing and caring facility that provided psychiatric residential treatment services and afforded temporary care for foster children was a health care business. Again, the *Alternate Family* Court reviewed the statutory language of 11 U.S.C. § 101(27A) but unlike the courts in *Medical Assocs.* and *Banes* found that the debtor was a health care business. *Alternate Family* analyzed the first four elements, but did not address the elements required by subsections (A) and (B), noting that the relationship between the debtor and its patients was on a day-to-day basis and clearly very intense. It also appears from the *Alternate Family* case that the patients, that is the children, were placed in a residential situation by the debtor. *Alternate Family*, 377 B.R. at 756-58.

8

Here, the Court is persuaded that the nature of Dr. Dias' medical practice, which involved his patients visiting the office for medical treatment, including minor surgery, does not meet the elements of a "health care business." First, as 11 U.S.C. § 101(27A) indicates, there must be some sort of medical treatment that requires the need for some sort of specialized, general hospital, or ancillary type facility, all as suggested by subsections (A) and (B). These subsections are instructive and cannot be ignored in construing 11 U.S.C. § 101(27A) in applying that statute to specific circumstances. Second, as *Banes, Medical Assocs.,* and *Alternate Family* all point out, there is some sort of need for a residency or extended care visitation required under 11 U.S.C. § 101(27A). Third, in reviewing the nature of the practice in *Banes, Medical Assocs.*, and *Alternate Family*, the Court considers the general practice of medicine to be more similar to a dental practice, as was the case in *Banes*, as opposed to the other two types of practices, which included administrative support for doctors or a child placing and caring agency and facility.

Also, the Court notes the legislative history, especially those comments of Senator Grassley, who carefully explained the concerns that Congress had in balancing the need to protect medical records for certain types of businesses. While legislative history may not be completely instructive, here it directs the Court to conclude that Dias P.C. is not a health care business.

Finally, the Court cannot ignore the Debtor's own self selection of "other" as opposed to "health care business" in the voluntary petition. Here, the Debtor had an opportunity to label itself as a health care business, but chose not to do so. This self labeling occurred prior to any issue of whether 11 U.S.C. § 351 applied and cannot be ignored by the Court. While the Court may not always find that the self labeling of a business by a debtor is binding, here it is very instructive that the Debtor did not consider itself a health care business until the issue was raised by the Trustee.

For these reasons, the Court concludes that Dias P.C. is not a health care business as defined

9

by 11 U.S.C. § 101(27A) and, therefore, the provisions of 11 U.S.C. § 351 do not apply.

With that conclusion, the Court then turns to whether the Trustee's Motion to Dismiss should be granted. Here, the Court notes the frustration of the Trustee of the lack of cooperation by Dr. Dias, but understands that this lack of cooperation may be caused in part by Dr. Dias' medical condition. Second, the Court notes that many Chapter 7 cases are filed that are without sufficient assets to pay administrative expenses, much less a distribution to unsecured creditors. Taking the factors as argued by the Trustee, the Court cannot find the necessary foundation to find that this case should be dismissed. Accordingly, the Court denies the Trustee's Motion to Dismiss.

**Signed on October 16, 2015**

                                          **/s/ Daniel S. Opperman**
                                          **Daniel S. Opperman**
                                          **United States Bankruptcy Judge**

10

15-30729-dof    Doc 53    Filed 10/16/15    Entered 10/16/15 16:25:33    Page 10 of 10